HOPE LAND MINERAL CORPORATION v CHRISTIAN

Docket No. 194922. Submitted June 4, 1997, at Lansing. Decided August 15, 1997, at 9:05 A.M. Leave to appeal sought.

Hope Land Mineral Corporation filed an action in the Livingston Circuit Court against Stewart Christian, as the personal representative of the estate of Elmo C. Kuhns, deceased, seeking to quiet title to certain underground natural gas storage rights. Panhandle Eastern Pipeline Company was allowed to intervene in the action as a defendant. The trial court, Stanley J. Latreille, J., entered a judgment in favor of the plaintiff, determining the plaintiff to be the true owner of the gas storage rights by virtue of adverse possession under color of certain sheriff's deeds. Christian and Panhandle appealed.

The Court of Appeals *held*:

1. The court properly applied the five-year period of limitation for actions for the recovery or possession of lands provided in MCL 600.5801(1); MSA 27A.5801(1), and not the fifteen-year limitation period in § 5801(4), to the plaintiff's adverse possession claim. The five-year limitation period is not limited solely to situations in which the validity of foreclosure proceedings is challenged.

2. To invoke the shorter period of limitation in § 5801(1) in an action to quiet title premised on adverse possession under color of a sheriff's deed, it is necessary for the party seeking to establish adverse possession under the shorter period only to show that it claims title under a facially valid sheriff's deed.

3. The court properly found that the plaintiff had established all the necessary elements to claim title to the gas storage rights under a theory of adverse possession. The plaintiff established by clear and cogent proof that its possession was actual, visible, open, notorious, exclusive, continuous, and uninterrupted for the statutory period of five years.

Affirmed.

1. QUIETING TITLE — ADVERSE POSSESSION — LIMITATION OF ACTIONS.

The five-year period of limitation applicable to actions for the recovery or possession of lands provided in § 5801(1) of the Revised Judicature Act applies in an action to quiet title premised on adverse possession under color of a sheriff's deed made upon the

sale of the property by a sheriff at a mortgage foreclosure sale where the party seeking to establish adverse possession shows that it claims title under a facially valid sheriff's deed; application of the period of limitation provided in § 5801(1) is not limited solely to situations in which the validity of the foreclosure proceedings is challenged (MCL 600.5801[1]; MSA 27A.5801[1]).

2. ADVERSE POSSESSION — MINERAL RIGHTS — ELEMENTS.

Adverse possession of mineral rights such as gas leases must be established by clear and cogent proof that the claimant's possession was actual, visible, open, notorious, exclusive, continuous, and uninterrupted for the applicable statutory period.

*Frederick J. Amrose*, for the plaintiff.

*Bodman, Longley & Dahling LLP* (by *Robert G. Brower* and *Christian W. Fabian*), for the defendant and intervening defendant.

Before: CORRIGAN, C.J., and MICHAEL J. KELLY and HOEKSTRA, JJ.

MICHAEL J. KELLY, J. Defendant Stewart Christian, in his capacity as personal representative of the estate of Elmo C. Kuhns, and intervening defendant-counterplaintiff Panhandle Eastern Pipeline Company appeal as of right the trial court's judgment for plaintiff Hope Land Mineral Corporation in this action to quiet title in underground natural gas storage rights. We affirm.

By 1977, Elmo Kuhns and his wife, Rhea Kuhns, owned a one-half interest in approximately 330 acres of land in Genoa Township. Their son and his wife, Bernard and Betty Kuhns, owned the other one-half interest. The Kuhnses, Elmo, Rhea, Bernard, and Betty, held the land subject to Panhandle's gas storage leases, which had been acquired in 1957. In April 1977, in exchange for a loan, the Kuhnses granted the Federal Land Bank a mortgage on their property that

concluded with the language, "[e]xcepting all oil, gas, mineral rights and pipelines." The Kuhnses defaulted on the loan. In June 1979, Rhea Kuhns died and her interest in the land passed to Elmo Kuhns. The three surviving Kuhns family members then sued the Federal Land Bank and obtained a judgment ordering the bank to sell the property subject to the mortgage in four separate parcels, and not as a single lot.

In April 1982, the two properties relevant to this case were foreclosed upon and sold to the Federal Land Bank at a sheriff's sale. Neither the judgment nor the two sheriff's deeds contained language concerning the Kuhnses' interest in the gas storage leases. From 1957 to when the redemption period of the sheriff's deeds expired in April 1983, Panhandle had paid the annual rent for its gas storage leases to the Kuhnses. After April 1983, Panhandle paid rent to the Federal Land Bank. In early 1984, Bernard and Betty filed for bankruptcy, but did not list any interest in the gas storage leases on their schedules of assets.

On November 26, 1984, the Federal Land Bank conveyed a portion of the former Kuhns family property to Peter Burgher by a limited warranty deed that was recorded the same day. This deed contained the language "excepting and reserving to the party of the first part and its successors and assigns 50% per cent [sic] of all right and title in and to any and all oil, gas and other minerals . . . ." On the same day, Burgher conveyed his interest in the property to his business, Hope Land Company, by a quitclaim deed that was also recorded. Thereafter, Panhandle paid half of its gas storage rent to Hope Land Company and the other half to the Federal Land Bank.

On February 25, 1985, Elmo Kuhns died. On December 18, 1989, Hope Land Company conveyed its interest in the gas storage rights to its successor, plaintiff Hope Land Mineral Corporation, by a quit-claim deed that was recorded the same day. Hope Land Company subdivided the surface land into residential lots, with each deed excepting and reserving the gas storage rights. Although from July 1984 to September 1992 Panhandle did not pay any rent to Bernard and Betty Kuhns, these parties recorded a "Ratification of Oil, Gas and Storage Leases" on September 11, 1992. Plaintiff discovered this and objected, considering itself to be the true owner of the gas storage rights as contemplated in the ratification.

In March 1994, plaintiff filed this quiet title action against the estate of Elmo Kuhns and its personal representative, alleging that for more than five years, the applicable period of limitation under MCL 600.5801(1); MSA 27A.5801(1), neither Elmo Kuhns nor anyone acting on his behalf challenged the title to the gas storage leases that plaintiff traced to the 1982 sheriff's deeds and, hence, that plaintiff held its interest in the gas storage leases by virtue of adverse possession. Panhandle intervened as a defendant and filed a counterclaim against plaintiff for slander of title.[1] Determining plaintiff to be the true owner of the gas storage interests at issue by virtue of adverse possession under color of the sheriff's deeds, the trial court entered judgment in plaintiff's favor.

---

[1] The trial court dismissed Panhandle's counterclaim with prejudice. On appeal, Panhandle does not frame the issues as concerning the trial court's dismissal of its claim for slander of title.

Appellants first argue that the trial court erred in determining that the five-year period of limitation for actions for the recovery or possession of lands, MCL 600.5801(1); MSA 27A.5801(1), applied to the facts of this case, and not the fifteen-year limitation period set forth in MCL 600.5801(4); MSA 27A.5801(4). Appellants contend that the five-year limitation period applies only in situations where the validity of foreclosure proceedings is in dispute because of an irregularity. Appellants argue that, because plaintiff is not challenging the validity of the 1982 foreclosure proceedings, but claims to have obtained title by adverse possession under color of the 1982 sheriff's deeds, it may not avail itself of the five-year limitation period. Thus, appellants advance that the trial court erred in entering judgment for plaintiff, because plaintiff could not establish that it had openly and notoriously claimed an interest in the gas storage leases for the requisite fifteen-year period, as provided in MCL 600.5801(4); MSA 27A.5801(4). We agree with plaintiff that the trial court was correct in applying the five-year limitation period to plaintiff's adverse possession claim.

MCL 600.5801(1); MSA 27A.5801(1) provides:

> No person may bring or maintain any action for the recovery or possession of any lands or make any entry upon any lands unless, after the claim or right to make the entry first accrued to himself or to someone through whom he claims, he commences the action or makes the entry within the periods of time prescribed by this section.
>
> (1) When the defendant claims title to the land in question by or through some deed made upon the sale of the premises . . . by a sheriff upon a mortgage foreclosure sale the period of limitation is 5 years.

See also *Thomas v Steuernol*, 185 Mich App 148, 152-153; 460 NW2d 577 (1990).

Although our reading of MCL 600.5801(1); MSA 27A.5801(1) leads us to the conclusion plaintiff urges upon us, we acknowledge that appellants' argument finds some support in earlier Supreme Court opinions. See, e.g., *Lau v Pontiac Commercial & Savings Bank*, 260 Mich 73; 244 NW 233 (1932). However, the Supreme Court's opinion in *Adair v Bonninghausen*, 305 Mich 137; 9 NW2d 35 (1943), persuades us that the five-year limitation period in MCL 600.5801(1); MSA 27A.5801(1) is not limited solely to situations in which the validity of foreclosure proceedings is challenged.

In *Adair*, at 141, the Supreme Court addressed the application of a predecessor statute that provided a fifteen-year limitation period for "all other cases" and a ten-year limitation period where a person "claims title under a deed made . . . upon the sale of land for taxes." The *Adair* plaintiffs filed an action to quiet title, claiming that they obtained good title to the land in question by adverse possession under color of a tax deed. *Id.* at 140. The Supreme Court framed the issue thusly: "Can [the] defendant . . . claim any title under a tax deed within the meaning of this statute after nonaction for over 10 years on the ground of [the] plaintiff's [sic] failure to serve notice of reconveyance on all interested parties after plaintiffs have been in possession of the property?" *Id.* at 141. The Court concluded that the case should be decided under the shorter limitation period, stating:

> The statute would serve no purpose if it could be invoked only where the tax deed was valid. Its protection, therefore, extends to all instances where defendant merely claims title

thereunder. That claim, to be sufficient to set the statute in motion, need not have to withstand all evidence brought against it to show that it is bad; but it must appear to be good on its face. [*Id.* at 143.]

While *Adair* concerned application of the shorter limitation period to a claim of adverse possession under color of a tax deed, we deem it proper to extend its reasoning to the situation before us. To invoke the shorter limitation period in MCL 600.5801(1); MSA 27A.5801(1) in an action to quiet title premised on adverse possession under color of a sheriff's deed, it is necessary for the party seeking to establish adverse possession under the shorter period only to show that it claims title under a facially valid sheriff's deed. Accordingly, we find that the trial court did not err in applying the five-year limitation period to plaintiff's adverse possession claim.

Next, appellants argue that the trial court erred in finding that plaintiff had established all the necessary elements to claim title to the gas storage rights under a theory of adverse possession. We disagree.

To establish adverse possession of mineral rights such as gas leases, plaintiff was required to establish by clear and cogent proof that its possession was actual, visible, open, notorious, exclusive, continuous, and uninterrupted for the statutory period of, here, five years. *Thomas v Rex A Wilcox Trust*, 185 Mich App 733, 736-737; 463 NW2d 190 (1990). We find that the evidence supports plaintiff's claim of adverse possession. First, in 1984, Hope Land Company, plaintiff's predecessor, received a conveyance of gas storage rights from the Federal Land Bank. This conveyance was recorded, as were all subsequent conveyances of the gas storage rights, including the conveyance to

plaintiff in December 1989. Clearly, plaintiff and its predecessors possessed the gas storage rights openly and notoriously. Second, after the redemption period of the sheriff's deeds expired in 1983, Panhandle paid Hope Land Company and the Federal Land Bank its gas storage lease payments, thus holding out that these parties were the rightful owners of the gas storage rights in question. In 1993 and 1994, Panhandle tendered rent exclusively to plaintiff.[2] Therefore, plaintiff's possession of the gas storage rights was exclusive. Finally, Hope Land Company subdivided the land it obtained from the Federal Land Bank into residential lots, but excepted and reserved its claimed gas storage rights in all the deeds to the lots at issue in this case. When plaintiff brought this action to quiet title in March 1994, Hope Land Company or its grantee, plaintiff, had received these rents since June 1985. Thus, plaintiff's possession was continuous and uninterrupted for the requisite number of years. In light of this evidence, we find that plaintiff succeeded in establishing its adverse possession claim. The trial court was correct in entering judgment for plaintiff in its action to quiet title.

Affirmed.

---

[2] On November 23, 1992, a successor to the Federal Land Bank, Agri Bank, conveyed its remaining one-half interest in the gas storage leases to plaintiff by a quitclaim deed that was recorded on December 8, 1992.